[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
APRIL 20, 2012
JOHN LEY

No. 10-13334
_____

D. C. Docket No. 5:09-cv-00025-CAR


ANDREW ALLEN COOK,

Petitioner-Appellant,

versus

WARDEN, GEORGIA DIAGNOSTIC PRISON,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 20, 2012)


Before DUBINA, Chief, Judge, EDMONDSON and PRYOR, Circuit Judges.


PER CURIAM:

Petitioner, a state prisoner, appeals the District Court's denial of his habeas corpus petition. We affirm the denial.

Background

In Georgia, Petitioner was tried and convicted of two counts of malice murder and two counts of felony murder. Petitioner received a death sentence for one of the killings and a life imprisonment sentence for the other. The exact reason behind the killings is somewhat unclear, but some evidence shows that Petitioner killed the Victims just to see if he "could get away with it."

A lengthy investigation eventually led authorities to suspect Petitioner. Petitioner confessed to various persons, including two confessions to his father, who was a Special Agent with the FBI. One of the confessions occurred when Petitioner was in custody. Petitioner's father testified at both the guilt phase and the penalty phase. Petitioner's father was not on duty or acting in an official capacity when Petitioner confessed to the killings.

After the jury verdict and sentencing, Petitioner directly appealed within the state courts. The Georgia Supreme Court affirmed his convictions and sentences, and the U.S. Supreme Court denied his petition for certiorari.

Petitioner then filed a petition for writ of habeas corpus in state court. Finding ineffective assistance of trial counsel, the state habeas court vacated the capital sentence but affirmed the convictions. By a studied opinion, the Georgia Supreme Court affirmed the denial of guilt-phase habeas relief but reversed the grant of penalty-phase relief. The Georgia Supreme Court reinstated Petitioner's death sentence. Schofield v. Cook, 663 S.E.2d 221, 232 (Ga. 2008).

Petitioner next sought habeas relief in federal court. The District Court denied all relief but granted Petitioner a certificate of appealability on three issues, which are now before this Court: (1) whether Petitioner's trial counsel failed to conduct an adequate investigation and presentation of mitigation evidence during the penalty phase of the trial; (2) whether trial counsel failed to prepare adequately John Cook, Petitioner's father, to testify during the penalty phase; and (3) whether the trial court improperly admitted inculpatory statements Petitioner made to his father. We affirm the denial of habeas relief.

Standard of Review

Petitioner's habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub L. 104-132, 110 Stat. 1214 (1996)

3

(codified in scattered sections of Title 28 of the U.S. Code) ("the AEDPA").

To obtain habeas relief under the AEDPA, Petitioner must demonstrate that the state court's post-conviction ruling was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The AEDPA imposes an "exacting standard." Maharaj v. Sec'y for the Dep't of Corr., 432 F.3d 1292, 1308 (11th Cir. 2005).

We review de novo the District Court's legal conclusions and its conclusions on mixed questions of law and fact. Boyd v. Allen, 592 F.3d 1274, 1293 (11th Cir. 2010). The AEDPA affords a presumption of correctness to a factual determination made by a state court. 28 U.S.C. § 2254(e).

Discussion

Petitioner argues that the Georgia Supreme Court's decision was contrary to the United States Supreme Court's decision in Strickland v. Washington, 104 S. Ct. 2052 (1984), and its progeny. Petitioner also contends the state supreme

4

court's decision was an unreasonable application of <u>Strickland</u> (and its progeny) and was based on an unreasonable determination of the facts.

To demonstrate the ineffective assistance of counsel, <u>Strickland</u> requires that a lawyer's performance be both deficient objectively and prejudicial to the ultimate fairness and reliability of the proceeding. For deficiency, Petitioner must show counsel's performance "fell below an objective standard of reasonableness." <u>Id.</u> at 2064. For prejudice, Petitioner must show that a "reasonable probability" exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 2068.

Petitioner claims the Georgia Supreme Court contravened or unreasonably applied <u>Strickland</u> and its progeny because, for sentencing, Petitioner's counsel failed (1) adequately to investigate and present mental health evidence; (2) adequately to investigate and present evidence about Petitioner's upbringing; and (3) adequately to prepare a key witness -- Petitioner's father John Cook.

<u>Mental Health Evidence</u>

About mental health evidence, the Georgia Supreme Court concluded that counsel's strategic decision to forgo presentation of mental health evidence was

5

not unreasonable, based upon the information trial counsel had uncovered at the time. This Court has said that "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).

Counsel made the decision to forgo the presentation of mental health evidence because his investigation of his client's mental health revealed many pieces of potentially damaging evidence that could have been presented in rebuttal: episodes of alleged malingering; admissions by Petitioner that he was exaggerating or otherwise faking mental disturbances; a history of childhood violence; episodes of alleged cruelty to animals; medical records and statements by medical professionals that Petitioner was manipulative or otherwise seeking to seem more unstable than he actually was, and so on.

Given the danger of these negative pieces of information coming in, trial counsel made the reasonable choice of bypassing the presentation of mental health evidence and instead opting for a different strategy. The state supreme court's decision was not contrary to or an unreasonable application of Strickland. Nor was the state supreme court's decision an unreasonable determination of the facts, given the damaging potential evidence that existed.

6

The Georgia Supreme Court also considered whether counsel's decision to forgo the presentation of mental health evidence "was corrupted by insufficient investigation and, if so, whether actual prejudice to the outcome of [Petitioner's] case resulted." 663 S.E.2d at 227. For this analysis, the state supreme court assumed deficient performance (about the non-discovery of the "River Edge" records, which are discussed below), but nevertheless concluded that no legally significant prejudice could be shown.

The Georgia Supreme Court's determination of no prejudice did not contravene or unreasonably apply Strickland and its progeny, nor was the finding based on an unreasonable determination of the facts.

In assessing whether prejudice exists, the reviewing court must "reweigh the evidence in aggravation against the totality of available mitigating evidence." Wiggins v. Smith, 123 S. Ct. 2527, 2542 (2003). The "reviewing court must consider all the evidence -- the good and the bad -- when evaluating prejudice." Wong v. Belmontes, 130 S. Ct. 383, 390 (2009).

In addition to other supposedly beneficial mental health evidence, Petitioner points especially to one set of mental health records -- the River Edge records. The River Edge records come from Petitioner's 1997 treatment (while incarcerated awaiting trial) at the River Edge Behavioral Health Center. Petitioner's trial

7

counsel did not know of the River Edge records and did not present the River Edge records to Petitioner's psychologist, Dr. Shapiro. The River Edge records feature a diagnostic impression of "major depression with psychotic features."

Petitioner says the presentation of the River Edge records would have had a reasonable probability of changing the outcome of the sentencing phase. Petitioner points to habeas-proceeding testimony from Dr. Shapiro -- a mental health expert who evaluated Petitioner before trial. Dr. Shapiro -- during state habeas proceedings -- expressed a willingness to have revisited portions of his earlier evaluation of Petitioner had he known the information contained in the River Edge records.

But Dr. Shapiro also acknowledged that when he evaluated Petitioner before sentencing, Dr. Shapiro knew much of what was contained in the River Edge records. For example, Dr. Shapiro knew that Petitioner had been previously diagnosed with major depression (in 1984), had been hospitalized for depression, had sleeping issues, and that Petitioner claimed various kinds of emotional and physical abuse. The River Edge records did contain a new allegation of sexual abuse. Dr. Shapiro also testified on cross-examination in the state habeas proceedings that Petitioner's sexual abuse allegations would not necessarily have changed all of Dr. Shapiro's medical conclusions. And the changes that would

8

have come, Georgia's Supreme Court concluded, would have created "no reasonable probability of a different outcome."

The River Edge records are unhelpful to Petitioner's case in other ways. For example, while the records contain sexual abuse allegations by Petitioner, Petitioner's sister (the sole identified alleged perpetrator) strongly denied the allegations in her own habeas testimony. Even if these allegations had prompted further investigation before sentencing, Petitioner made the sexual abuse allegations for the first time while incarcerated and awaiting trial for two murders. Petitioner -- a man with a history of suspected malingering -- had reason then to draw his mental health in question. For the Georgia high court to determine that the sexual abuse allegations would likely appear "dubious to the jury" and would create "no reasonable probability of a different outcome" was not unreasonable.

That the River Edge records provide a separate diagnostic impression of major depression (in addition to the 1984 diagnosis) might on its own have been somewhat helpful to Petitioner's case at sentencing. But given the entirety of the evidence, we cannot say that the Georgia Supreme Court contravened or unreasonably applied Strickland or its progeny by concluding that no prejudice

9

existed.[1]  And given the other hurtful evidence that tends to undercut any usefulness the River Edge records may have had to Petitioner's case, the Georgia Supreme Court's determination of no prejudice was a reasonable determination of the facts.

Evidence about Petitioner's Background and Upbringing

Petitioner also claims deficiency and resulting prejudice from his trial lawyers' alleged failure in investigating and presenting potentially mitigating evidence about Petitioner's upbringing.

As the record shows (and as the Georgia Supreme Court concluded), Petitioner's trial lawyers "took several important steps to investigate Cook's family background" and other evidence surrounding his upbringing.[2]  Counsel adequately investigated Petitioner's background and upbringing; and in so finding, the

---

[1]Petitioner cites for support Porter v. McCollum, 130 S. Ct. 447 (2009).  But Porter is significantly different from this case for many reasons, especially because the mitigation evidence Porter's counsel failed to investigate and present was overwhelmingly stronger than the evidence Petitioner contends should have been presented in Petitioner's case.

[2]Petitioner's trial lawyers' investigatory "important steps" included interviewing family members on many occasions; traveling out of state to conduct interviews of family and potential witnesses; hiring an investigator to "track down witnesses"; hiring a social worker to investigate; ordering a "psychosocial assessment"; and seeking and obtaining all of Petitioner's psychological records from childhood onward (except for the River Edge records).

10

Georgia Supreme Court did not contravene or unreasonably apply Strickland or make an unreasonable factual determination.

Trial counsel also adequately presented evidence of Petitioner's background and upbringing. Lay testimony from Petitioner's family -- including his mother and father -- about Petitioner's background, family life, and upbringing was presented at sentencing. Counsel considered presenting other testimony from schoolmates and friends; but after investigation and consideration, counsel concluded that their testimony would be irrelevant or potentially harmful. Petitioner's lawyers made the reasonable decision to limit the evidence presented.

About prejudice, for the Georgia Supreme Court -- based on this record -- to conclude, as it did, that the other evidence the investigation uncovered would be harmful or otherwise cumulative of the evidence that Petitioner's counsel actually did present was not unreasonable.

We accept that Petitioner has shown no deficient performance and no resulting prejudice.[3] Therefore, the state supreme court's rejecting contentions on ineffective assistance of counsel in investigating and presenting evidence of Petitioner's upbringing was not contrary to or an unreasonable application of

---

[3]The deferential AEDPA standard of review applies to our review of the state supreme court's conclusions about both deficient performance and prejudice.

11

Strickland or later cases.[4]  And the state supreme court's decision also is based on no unreasonable determination of the facts, particularly in the light of the other evidence about Petitioner's background that could have been damaging to Petitioner had it come out.

The Preparation of Witness John Cook

Petitioner contends that his trial lawyers were ineffective in that they failed to prepare adequately their "star" witness, FBI Special Agent John Cook, Petitioner's father.  Petitioner claims counsel "simply called [John Cook] to the stand, then left him to his own devices."

Petitioner's lawyers, however, in fact had frequent contact with John Cook. The lawyers believed John Cook would be the most important witness -- the person who could most likely save his son from the death penalty.  And Petitioner's trial

---

[4]Petitioner cites for support Williams v. Taylor, 120 S. Ct. 1495 (2000).  For many reasons, however, the facts of Williams are too different from the facts of Petitioner's case.  For example, in Williams, counsel conducted exceptionally minimal investigation into what the Supreme Court called Williams' "nightmarish childhood" and failed to present significant mitigation evidence.  Here, by contrast, counsel conducted a far better investigation into Petitioner's background and upbringing and -- informed by that thorough investigation -- chose to present certain evidence and to leave out certain evidence.  "Williams [] create[s] no mechanistic rule of law at all for investigation or for presentation of evidence in capital cases." Chandler v. United States, 218 F.3d 1305, 1317 n.21 (11th Cir. 2000) (en banc).

lawyer testified in state habeas proceedings that he had discussions with John Cook "about the case and had discussions about the sentencing phase and if we got to a sentencing phase, what that would involve." The Georgia Supreme Court's decision sets out some of the father's trial testimony. And that court observed that habeas-proceeding records reflected that most persons in the courtroom were in tears during John Cook's testimony. The actual testimony given was determined to be an effective try to spare Petitioner's life.

Based on the complete evidence, the state supreme court's conclusion (of both no deficient performance and no prejudice) is consistent with a reasonable application of Strickland and later cases. And the state supreme court based its decision on no unreasonable determination of the facts.

Admissibility of Petitioner's Confession to his Father

Petitioner contends that he confessed without being warned of his right against self-incrimination and right to counsel. Petitioner says the Georgia Supreme Court's decision therefore contravenes and unreasonably applies Miranda v. Arizona[5] (and related cases) and is based on an unreasonable factual

---

[5] 86 S. Ct. 1602 (1966).

determination.

Miranda states that the prosecution may not use statements "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 1612. "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody[.]" Id. And we have written that no Miranda violation occurs when a suspect confesses to a family member who is employed in law enforcement, even when the family member -- acting in his private capacity -- urges the suspect to speak. United States v. Gaddy, 894 F.2d 1307, 1312-13 (11th Cir. 1990). Such circumstances are "not the functional equivalent of government interrogation," and the suspect's statements in Gaddy were "not given at the urging of or due to the exploitation by a [government] agent." Id. at 1313.

Here, like in Gaddy, the particular facts and circumstances show no violation of Miranda despite the lack of warnings.[6] First, although John Cook happens to have been an FBI agent, he was chiefly acting as Petitioner's father; John Cook had no involvement in the investigation of the murders. Before Petitioner confessed, Petitioner requested both his father and a lawyer. John Cook never

_____

[6]At least one meeting with his father occurred while Petitioner was in custody.

14

"offered" -- that is, put himself forward to the state to act as a state agent -- to speak with his son. Petitioner asked to speak to his father, and the father also merely asked permission to speak with his son: the father was not directed by a superior. John Cook also testified that he was not thinking of his job as an FBI agent at the pertinent time; instead he wanted to protect his son and possibly to convince his son to cooperate for leniency. At the meeting between father and son, there was crying, shaking, and hugging on the part of both men; such acts are typically absent in custodial interrogations. Georgia's high court determined that the father was acting as a father rather than as a law enforcement officer.

According to the Georgia Supreme Court, no government coercion caused Petitioner to confess: Petitioner freely confessed to his father. The Georgia Supreme Court decision does not contravene or apply unreasonably Miranda (or later cases) and also makes no unreasonable determination of the facts.

Conclusion

Given the record and the pre-existing law from the nation's highest court, Georgia's high court decision on the issues now before us was completely reasonable. The District Court's order denying Petitioner's habeas petition is

15

affirmed.

AFFIRMED.